# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DHILLON SINGH, et al., | Case No.: 1:15-cv-01435 LJO JLT |
| Plaintiffs, | ORDER GRANTING IN PART MOTION TO COMPEL |
| v. | |
| HANCOCK NATURAL RESOURCES GROUP, INC., et al., | (Doc. 47) |
| Defendants. | |

In this action, the plaintiff contends the Goose Pond breached a contract to sell 2,470 acres of farmland that was, at the time, being used as an almond farm. (Doc. 29 at 4)

## I. Legal Standards Governing Discovery

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure. Rule 26(b) states in relevant part:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

1

**II. Production of electronic mail and other documents along with the associated metadata in response to production requests**

    **A.    Legal Standards**

A party may request documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Similarly, a party may serve a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property . . ." Fed. R. Civ. P. 34(a)(2). A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form or forms in which electronic information can be produced. Fed. R. Civ. P. 34(b). Thus, a request is sufficiently clear if it "places the party upon 'reasonable notice of what is called for and what is not.'" Kidwiler v. Progressive Paloverde Ins. Co., 192. F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting Parsons v. Jefferson-Pilot Corp., 141 F.R.D. 408, 412 (M.D.N.C. 1992)); see also Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is whether a respondent of average intelligence would know what items to produce").

The responding party must respond in writing and is obliged to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed. R. Civ. P. 34(a). Actual possession, custody or control is not required. "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 620 (N.D. Cal. 1995).

In the alternative, a party may state an objection to a request, including the reasons for the objection. Fed. R. Civ. P. 34(b)(2)(A)-(B). When a party resists discovery, he "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Oakes v. Halvorsen Marine Ltd., 189 F.R.D 281, 283 (C.D. Cal. 1998) (citing Nestle Food Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990)).

Boilerplate objections to a request for a production are not sufficient.  Burlington Northern & Santa Fe Ry. v. United States Dist. Court, 408 F.3d 1142, 1149 (9th Cir. 2005).

If a party "fails to respond that inspection will be permitted - or fails to permit inspection - as requested under Rule 34," the propounding party may make a motion to compel production of documents.  Fed. R. Civ. P. 37(a)(3)(B)(iv).  Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery."  Branch v. Umphenour, 2014 U.S. Dist. LEXIS 109288 at *10 (E.D. Cal. Aug. 7, 2014) (citing Hallet v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)).

**B.     Discussion and Analysis**

The parties agree the defendants requested email communications in TIFF format with the corresponding metadata.[1]  (Doc. 48 at13)  Despite this, the plaintiff produced some TIFF-formatted emails but only after they had been forwarded from the subject computer to the office of the former attorney for the plaintiffs.  According to the defendants, this resulted in the metadata being "wholly useless and irrelevant because it pertains to the forwarded versions of the emails to Plaintiffs' counsel's paralegal, not the original emails between Plaintiffs and Hancock." Id. at 9, emphasis deleted.

The defendants argue that the metadata from the native versions of the email is crucial because it appears that the plaintiffs have produced key emails that are changed when compared to the same emails directed to the recipient.  (Doc. 48 at 9-10)  The defendants assert that emails appear to have been "whited out from Plaintiffs' versions, and in other instances new and different text has been inserted into Plaintiff's versions." Id. at 10.  In one example, the defendants direct the

---

[1] The parties "agreed to produce ESI in the following formats: ... For electronic documents and emails, the parties will produce electronically Bates numbered single-page TIFFs with appropriate document breaks, OCR text files, a corresponding load file for the images, and a generic delimited data file for the corresponding metadata . . . Emails and attachments will be referenced to each other in the data file and will be sequential in document numbering so that attachments to emails will follow the email. The metadata to be included shall be as follows: Beginning Production Number, Ending Production Number, Beginning Production Attachment, Ending Production Attachment, File Type, Last Modified Date, Sent Date, Last Modified Time, Sent Time, Author, To, CC, BCC, Subject Line, Custodian, Attachment Count, File Name, Last Accessed Date, Received Date, Full text, Confidentiality designation, Native File Link ...."

3

Court's attention to two versions of the same email[2] (Compare 49-2 at 2 with 49-1 at 2). In the plaintiffs' copy, it states that Hancock's representative indicate (apparently, when discussing a document related to the sale) that "It's Acceptable." (Doc. 49-1 at 2; Doc. 49 at 4)  The one produced by Hancock does not have this language.  (Doc. 49-2 at 2; Doc. 49 at 4)

In a second example, the exact same email sent at the exact same time to the exact same people shows additional content ["on crop and Closing Escrow"] on the plaintiff's copy (Doc. 49-4 at 2; Doc. 49 at 5) that is not included on the email received by Hancock (49-6 at 2; Doc. 49 at 5). A third example shows the same e-mail with the plaintiffs' version (Doc. 49-8 at 2; Doc. 49 at 6) having significantly different content than Hancock's copy.  (Doc. 49-9 at 2; Doc. 49 at 6) Notably, Hancock produced all three of these emails with the associated metadata demonstrating, apparently, no alterations by Hancock.  (Doc. 49 at 4-6)

The plaintiffs do not address the inconsistencies in the emails.  Rather, their attorney (who has since been replaced) explained that he did not have any experience in e-discovery and was working with a computer specialist to correct the problem.  (Doc. 49 at 14)  In light of the significant showing as to the importance of the metadata from the native computer, the Court **GRANTS** the motion.  Thus, the motion to compel as to any request for electronically held documents is **GRANTED**.  Within ten days, the plaintiffs **SHALL** produce all emails and other documents sought by the defendants in the format demanded with the accompanying metadata from the native computer.

### A.      RFP's 2 & 6

**REQUEST FOR PRODUCTION NO. 2:**
The email referenced in paragraph 27 of the COMPLAINT that DHILLON purportedly sent to Danielle Harris on August 4, 2015 with the executed Purchase and Sale Agreement regarding the PROPERTY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**
Plaintiffs have enclosed herein a copy of the email referenced in paragraph 27.
**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**
The requested email referenced in paragraph 27 of the COMPLAINT is being produced in the separately attached TIFF images.

**REQUEST FOR PRODUCTION NO. 6:**
All DOCUMENTS that support the allegation in paragraph 27 of YOUR COMPLAINT

---

[2] Dr. Dhillon was out of the country at the time which seems to explain the differences in the times the emails record.

that on August 4, 2015, DHILLON sent an email to Danielle Harris attaching "the Purchase and Sale Agreement which he had signed as the Director and President of Lerdo, and which had the effective date of August 04, 2015."

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO.6:**
After completing a reasonable and diligent search, Plaintiffs' emails of August 4, 2015 between Dhillon and Harris are being produced in the separately attached TIFF images.

The parties dispute whether the plaintiffs provided the emails or the *executed* sales agreement referenced in the requests. (Doc. 48 at 15-16)  However, it is undisputed that to the extent any emails were provided, they were provided without the accompanying relevant metadata. Moreover, the defendants indicate that the plaintiffs provided "a standalone PDF (without metadata) of what appears to be a real estate purchase agreement signed by Dhillon and dated August 4, 2015." (Doc. 48 at 16)  Next, the defendants claim they received "a PDF of what appears to be Dhillon's August 4, 2015 email sending the *unsigned* Word version of the *draft* contract.  Id.   It appears to the Court that the defendants are arguing that the email that discussed the sales agreement indicated that attached to Dhilon's email was an unsigned, draft copy and that the plaintiffs have failed to provide an email which supports that Dhillon sent an executed, final copy of the sales agreement.  Thus, the motion is **GRANTED**.  Within ten days, the plaintiffs **SHALL** provide all responsive emails and documents.  They **SHALL** identify by Bates number which documents they intend to respond to these requests.  As to the emails and any other electronically held documents, the plaintiffs **SHALL** provide the records in the format demanded and with the accompanying metadata from the native computer.

**B.** **RFP's 8 & 9**

**REQUEST FOR PRODUCTION NO. 8:**
All DOCUMENTS that support the allegation in paragraph 38 of YOUR COMPLAINT that "[o]n or about August 15, 2015, Harris sent Dr. Dhillon a Purchase and Sale Agreement with the effective date of August 15, 2015. The Purchase and Sale Agreement included Schedules A-D, and an Escrow Agreement which was attached as Exhibit A to the Purchase and Sale Agreement."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**
After conducting a reasonable and diligent search, Plaintiffs were not able to locate any other DOCUMENTS other than the signed Purchase and Sale Agreement, and the email of August 15, 2015.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**
After conducting a reasonable and diligent search, Plaintiffs were not able to locate any other DOCUMENTS other than the signed Purchase and Sale Agreement, and the email of August 15, 2015, copies of which are being produced in the separately attached TIFF images.

**REQUEST FOR PRODUCTION NO. 9:**
All DOCUMENTS that support the allegation in paragraph 87 of YOUR COMPLAINT that on August 15, 2015, YOU and GPA entered into an "Agreement regarding Plaintiffs' purchase of the Farmland."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**
After conducting a reasonable and diligent search, Plaintiffs were not able to locate any other DOCUMENTS other than the signed Purchase and Sale Agreement, and the email of August 15, 2015.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO.9:**
After conducting a reasonable and diligent search, Plaintiffs were not able to locate any other DOCUMENTS other than the signed Purchase and Sale Agreement, and the email of August 15, 2015, copies of which are being produced in the separately attached TIFF images.

The defendants contend that the plaintiffs have not produced either the email or the attachment thereto. (Doc. 48 at 18) The plaintiffs claim they have produced the documents but do not claim to have identified the documents they believe are responsive by Bates number. Id. Thus, the motion is **GRANTED**. Within ten days, the plaintiffs **SHALL** provide all responsive emails and documents. They **SHALL** identify by Bates number which documents they intend to respond to these requests. As to the emails and any other electronically held documents, the plaintiffs **SHALL** provide the records in the format demanded and with the accompanying metadata from the native computer.

C.  **RFP 53**

**REQUEST FOR PRODUCTION NO. 53:**
KERN LERDO' S Articles of Incorporation and any amendments thereto.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**
Objection: Plaintiffs object on the grounds that this request is seeking information which is an undue invasion of Plaintiffs' constitutional, statutory and common law rights of privacy and confidentiality. In addition, Plaintiffs object on grounds that this interrogatory is seeking information which is protected by the attorney/client privilege, the attorney work product doctrine, or other privileges, protections, or doctrines of similar effect. Without waiving said objections, Plaintiffs respond as follows: Plaintiffs have enclosed a copy of KERN LERDO' S Articles of Incorporation herein.

The defendants contend the plaintiffs failed to provide the Articles of Incorporation and the plaintiffs admit that they failed to do so (Doc. 48 at 19). Thus, the motion to compel as to this request is **GRANTED** and the plaintiffs **SHALL** provide all responsive documents within ten days.

///

**D.     RFP's 10 & 19**

**REQUEST FOR PRODUCTION NO. 10:**
All DOCUMENTS created or revised by YOU concerning the PROPERTY, the PURCHASE AND SALE AGREEMENT, or the subject matter of YOUR COMPLAINT.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO.10:**
After conducting a reasonable and diligent search, Plaintiffs were not able to locate any other DOCUMENTS other than the Purchase and Sale Agreement of August 4, 2015, with edited changes, is being produced in the separately attached TIFF images.

**REQUEST FOR PRODUCTION NO. 11:**
All DOCUMENTS that relate or refer to the drafting, negotiation, or execution of the PURCHASE AND SALE AGREEMENT.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**
After conducting a reasonable and diligent search, Plaintiffs were not able to locate any other DOCUMENTS other than the signed Purchase and Sale Agreement of August 4, 2015, and the various emails between DHILLON and Danielle Harris as described in the First Amended Claim for Relief, copies of which are being produced in the separately attached TIFF images.

**REQUESTFORPRODUCTION NO. 19:**
All of the emails referenced or quoted in YOUR COMPLAINT.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**
After completing a reasonable and diligent search, all various emails as referenced or quoted in the COMPLAINT that Plaintiffs were able to locate, are being produced in the separately attached TIFF images.

The defendants assert that the plaintiffs failed to produce all responsive documents including e-mail correspondence that they know exist because Hancock produced copies of them. (Doc. 48 at 19-20)  The plaintiffs explain that they produced certain documents and certain e-mails but do not address why they failed to produce the emails that Hancock's records demonstrate exist. Id. at 20-21.  Thus, the motion to compel as to these requests is **GRANTED**.  Within ten days, the plaintiffs **SHALL** produce the Purchase and Sale Agreement of August 4, 2015 in the format demanded with the accompanying metadata from the native computer.  In addition, they **SHALL** produce all responsive email correspondence with the accompanying metadata from the native computer. They **SHALL** identify by Bates number which documents they intend to respond to these requests.

**E.     RFP's 26-27 & 29-30 & 36**

**REQUEST FOR PRODUCTION NO. 26:**
All DOCUMENTS that support DHILLON'S claims for damages in YOUR COMPLAINT.
///

**REQUEST FOR PRODUCTION NO. 27:**
All DOCUMENTS that evidence or support the calculation of the damages DHILLON claims in the COMPLAINT.

**SUPPLEMENTAL RESPONSE[S] TO REQUEST FOR PRODUCTION NO[S]. 26 [AND 27]:**
Objection: Plaintiffs object to this request on the grounds that it calls for speculation. Without waiving said objections, Plaintiffs respond as follows:
DHILLON has determined that as of the date of these supplemental responses, he has incurred an approximate income loss of $28,410,327 from six separate properties which DHILLON had to sell in order to raise the $62,100,000 to purchase the PROPERTY. All six properties were income producing properties, therefore, DHILLON has been deprived of this loss of income.
DHILLON has yet to determine the amount of other damages he is entitled to under the COMPLAINT. DHILLON believes that its damages consist of (1) loss of the subject property; (2) the rents, issues, profits thereof; (3) the-increase in the value of the subject property that could have been derived; (4) and exemplary, and/or punitive damages, however, DHILLON has not performed any method or manner to calculate the amount of its damages (not including exemplary, and/or punitive damages). DHILLON anticipates that he will hire an accountant to perform a forensic accounting, but has not done so as of yet.
In regards to the approximate income loss of $28,410,327 from the six separate properties, DHILLON has attached a summary which describes each property and explains how the loss income for each property was determined in his supplemental responses to GPA's First Set of interrogatories. Plaintiffs have no other requested DOCUMENTS.

**REQUEST FOR PRODUCTION NO. 29:**
All DOCUMENTS that support KERN LERDO'S claims for damages in YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 30:**
All DOCUMENTS that evidence or support the calculation of the damages KERN LERDO claims in the COMPLAINT.

**SUPPLEMENTAL RESPONSE[S] TO REQUEST FOR PRODUCTION NO[S]. 29 [AND 30]:**
Objection: Plaintiffs object to this request on the grounds that it calls for speculation. Without waiving said objections, Plaintiffs respond as follows:
KERN LERDO' S damages are the same as DHILLON's damages which have been determined as of the date of these supplemental responses. As such, KERN LERDO has incurred an approximate income loss of $28,410,327 from six separate properties which were sold in order to raise the $62,100,000 to purchase the PROPERTY. All six properties were income producing properties, therefore, DHILLON has been deprived of this loss of income.
KERN LERDO has yet to determine the amount of other damages it is entitled to under the COMPLAINT. KERN LERDO believes that its damages consist of (1) loss of the subject property; (2) the rents, issues, profits thereof; (3) the increase in the value of the subject property that could have been derived; (4) and exemplary, and/or punitive damages, however, KERN LERDO has not performed any method or manner to calculate the amount of its damages (not including exemplary, and/or punitive damages). KERN LERDO anticipates that it will hire an accountant to perform a forensic accounting, but has not done so as of yet.
In regards to the approximate income loss of $28,410,327 from the six separate properties, DHILLON has attached a summary which describes each property and explains how the loss income for each property was determined in his supplemental responses to GPA's First Set of interrogatories. Plaintiffs have no other requested DOCUMENTS.

**REQUEST FOR PRODUCTION NO. 36:**
All DOCUMENTS that support the allegation in paragraph 28 of YOUR COMPLAINT

that DHILLON "took steps to liquidate his assets by selling 93 acres of real estate property that he owned, and selling five gas stations that he owned."

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION N0.36:**
DHILLON has attached a summary which describes each property and explains how the loss [sic] income for each property was determined in his supplemental responses to GP A's First Set of interrogatories. Plaintiffs have no other requested DOCUMENTS.

In response to these requests, the plaintiffs produced a summary of information—part of which is illegible—detailing their basis for their damages calculations. (Doc. 48 at 21-23) As their responses indicate, the plaintiffs contend they were forced to sell properties in preparation for the purchase of the subject property and claim damages related thereto. Id. Consequently, the defendants contend that, at a minimum, there should be evidence of these sales including sales agreements and other related documents. Id.

Dhillon, inexplicably, takes the position that the defendants overlooked the summary they provided. (Doc. 48 at 23) Dhillon offers no explanation for the failure to provide the documents related to the sale of the collateral properties or, for example, documents demonstrating the income they claim they received in the past as to the six properties. Clearly, though Dhillon may no longer have personal possession of these documents, he is obligated to obtain them from those, such as escrow companies, banks, financiers, accountants, etc., over whom he exercises control. Fed. R. Civ. P. 34(a)(1). Thus, the motion to compel as to these requests is **GRANTED**. Within ten days, Dhillon **SHALL** produce all responsive documents including a legible copy of the summary previously produced. Any electronic documents **SHALL** be produced in the format demanded with the accompanying metadata from the native computer. Dhillon **SHALL** identify by Bates number those documents they intend to respond to these requests.

F.  <u>RFPs 37-42</u>

**REQUESTFORPRODUCTIONNO. 37:**
All DOCUMENTS that evidence or reflect the financial condition of DHILLON and his ability to perform the PURCHASE AND SALE AGREEMENT as of August 4, 2015.

**REQUEST FOR PRODUCTION NO. 38:**
All DOCUMENTS that evidence or reflect the financial condition of DHILLON and his ability to perform the PURCHASE AND SALE AGREEMENT as of August 15, 2015.

**REQUEST FOR PRODUCTION NO. 39:**
All DOCUMENTS that evidence or reflect the financial condition of DHILLON and his ability to perform the PURCHASE AND SALE AGREEMENT as of September 22, 2015.

**REQUEST FOR PRODUCTION NO. 40:**
All DOCUMENTS that evidence or reflect the financial condition of KERN LERDO and its ability to perform the PURCHASE AND SALE AGREEMENT as of August 4, 2015.

**REQUEST FOR PRODUCTION NO. 41:**
All DOCUMENTS that evidence or reflect the financial condition of KERN LERDO and its ability to perform the PURCHASE AND SALE AGREEMENT as of August 15, 2015.

**REQUEST FOR PRODUCTION NO. 42:**
All DOCUMENTS that evidence or reflect the financial condition of KERN LERDO and its ability to perform the PURCHASE AND SALE AGREEMENT as of September 22, 2015.

**SUPPLEMENTAL RESPONSE[S] TO REQUEST FOR PRODUCTION [NOS. 37-42]:**
Objection: Plaintiffs object on the grounds that this request is seeking information which is an undue invasion of Plaintiffs' constitutional, statutory and common law rights of privacy and confidentiality. In addition, Plaintiffs object on grounds that this interrogatory is seeking information which is protected by the attorney/client privilege, the attorney work product doctrine, or other privileges, protections, or doctrines of similar effect. Furthermore, Plaintiffs object on the grounds that said request is unduly burdensome and harassing.
Without waiving said objections, Plaintiffs respond as follows:
Plaintiffs has previously produced a copy of an Annual Customer Statement of Randeep Dhillon for the Period of: 05/31/2011 - 06/30/2015 which indicates an Ending Cash Balance: 45,503,672.48 and Total Account Equity: 45,504,915.22.
After conducting a reasonable and diligent search, Plaintiff [sic] has located an Account Statement for Bbalebti [sic] Enterprises Inc. from WestAmerica Bank [Docs. 8-16], and the aforementioned Annual Customer Statement [Doc. 21], copies of which are being produced in the separately attached TIFF images.

These requests seek documents that demonstrate Dhillon and Kern Lerdo were financially capable of completing the sale on three dates: August 4, August 15 and September 22, 2015.  (Doc. 48 at 24-25)  In response, Dhillon produced an "Annual Customer Statement of Randeep Dhillon for the Period of 05/31/2011 – 06/30/2015 which indicates an Ending Cash Balance: 45,503,672.48 and Total Account Equity: 45,504,915.22." (Doc. 48 at 25)  Clearly, this document is not responsive to the requests. The fact that he had these assets months earlier does not demonstrate he had them on the operative dates.  Moreover, Dhillon fails to explain why he simply did not obtain a document from his financial institution demonstrating his financial capability on the dates requested.  Kern Lerdo provided no responsive documents though Dhillon now explains that, despite its corporate form, Kern Lerdo failed to maintain a bank account separate from Dhillon.  Thus, the motion to compel as to these requests is **GRANTED**.  Within ten days, the plaintiffs **SHALL** produce all responsive documents and, if, indeed, Kern Lerdo does not have any evidence of its ability to complete the sale on the specified dates, it **SHALL** amend its response to

10

state this. Any electronic documents **SHALL** be produced in the format demanded with the accompanying metadata from the native computer. The plaintiffs **SHALL** identify by Bates number which documents they intend to respond to these requests.

### G. RFPs 32 & 55

**REQUEST FOR PRODUCTION NO. 32:**
All DOCUMENTS that support DHILLON'S responses to GPA'S First Set of Interrogatories to DHILLON.

**REQUESTFORPRODUCTIONNO. 55:**
All DOCUMENTS that record or reflect KERN LERDO'S expenses and funding from January 2015 to date, including periodic financial statements, annual reports, budgets, general ledgers, tax records, cash disbursement records, cash receipt records, accounts payable records, and any other DOCUMENTS that record or reflect its inflow and outflow of funds during that period.

The defendants assert that the plaintiffs provided no responsive documents to these requests. (Doc. 48 at 27)  The plaintiffs explain that they indicated in response "that after completing a reasonable and diligent search, all such documents that Plaintiffs were able to locate were produced in the separately attached TIFF images." Id.  However, it does not appear that the plaintiffs indicated which of the documents responded to these requests.  Thus, the motion to compel as to these requests is **GRANTED**.  Within ten days, the plaintiffs **SHALL** produce all responsive documents in the format demanded with the accompanying metadata from the native computer. They **SHALL** identify by Bates number the documents they intend to respond to these requests.

### H. RFPs 3 & 4

**REQUEST FOR PRODUCTION NO. 3:**
The GPA executed counterpart to the Purchase and Sale Agreement regarding the PROPERTY.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**
After completing a reasonable and diligent search, Plaintiffs were unable to locate an executed counterpart to the Purchase and Sale Agreement regarding the PROPERTY from GPA. Furthermore, Plaintiffs are not certain whether or not they received an executed counterpart to the Purchase and Sale Agreement regarding the PROPERTY from GPA.

**REQUEST FOR PRODUCTION NO. 4:**
Any transmittal letter or email communicating to YOU the GPA executed counterpart to the Purchase and Sale Agreement regarding the PROPERTY.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO.4:**
After completing a reasonable and diligent search, Plaintiffs were unable to locate any

transmittal letter or email communicating the GPA executed counterpart to the Purchase and Sale Agreement regarding the PROPERTY. Furthermore, Plaintiffs are not certain whether or not they received an executed counterpart to the Purchase and Sale Agreement regarding the PROPERTY from GPA.

The defendants assert that the plaintiffs' responses to these requests leave it unclear whether the specified documents exist. (Doc. 48 at 28-29) In response, the plaintiffs claim to have made a diligent search and were unable to locate the documents and report a lack of certainty whether they ever received a copy of the documents. Id. The Court agrees that these responses are sufficient. If the defendants wish to clarify whether the plaintiffs contend the documents exist, they can do so through other discovery methods. Thus, the motion to compel as to these requests is **DENIED**.

I. **RFPs 7 & 18**

**REQUEST FOR PRODUCTION NO. 7:**
All DOCUMENTS that support the allegation in paragraph 43 of YOUR COMPLAINT that on August 15, 2015, Danielle Harris submitted an agreement to DHILLON and requested that he sign and return the agreement.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**
After conducting a reasonable and diligent search, Plaintiffs were not able to locate any other DOCUMENTS other than the signed Purchase and Sale Agreement, and the email of August 4, 2015, copies of which are being produced in the separately attached TIFF images.

**REQUEST FOR PRODUCTION NO. 18:**
All COMMUNICATIONS between YOU and HNRG concerning GPA, the PROPERTY, the PURCHASE AND SALE AGREEMENT, or the subject matter of YOUR COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**
After conducting a reasonable and diligent search, Plaintiffs were unable to locate any such COMMUNICATIONS.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**
After conducting a reasonable and diligent search, Plaintiffs were unable to locate any such COMMUNICATIONS.

The defendants assert that the plaintiffs responded to the request number 7 by referring to August 4, 2015 despite that the request sought information related to August 11, 2015. (Doc. 48 at 29-30) Likewise, in response to number 18, the plaintiffs denied any documents existed despite their production as to other requests which plainly demonstrate that documents do exist. (Doc. 30-31) The plaintiffs indicate that the substance of the responses was correct and that, as to number 7, the date was a typographical error. As to number 18, the plaintiffs indicate they intended the

1  response to read that there were no responsive documents *other* than those produced.  Thus, the
2  motion as to this request is **GRANTED** and the plaintiffs **SHALL** provide amended responses
3  within ten days.  If the plaintiffs wish to rely upon documents produced as to other requests, they
4  **SHALL** identify by Bates number the documents they intend to respond to these requests.

5  **J.**    **RFP 44**

6  **REQUEST FOR PRODUCTION NO. 44:**
   All DOCUMENTS that support the allegation in paragraph 41 of YOUR COMPLAINT
7  that "the 2015 almond crop was vastly improved due to the advice and instructions [of] Dr.
   Dhillon."
8
   **SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 44:**
9      After conducting a reasonable and diligent search, Plaintiffs were only able to locate a
   visits log, a copy of which was previously produced.
10

11      The defendants assert that the plaintiffs failed to provide the "visits log" to which the
12  plaintiffs referred in response.  (Doc. 48 at 31)  The plaintiffs indicate that this must have been an
13  oversight and will produce the "visits log."  Thus, the motion as to this request is **GRANTED** and
14  the plaintiffs **SHALL** provide amended responses within ten days.

15  **III.**    **Responses to interrogatories**

16  **A.**    **Legal Standards**

17      A party may propound interrogatories relating to any matter that may be inquired to under
18  Rule 26(b).  Fed. R. Civ. P. 33(a).  A responding party is obligated to respond to the fullest extent
19  possible, and any objections must be stated with specificity.  Fed. R. Civ. P. 33(b)(3)-(4).  In
20  general, a responding party is not required "to conduct extensive research in order to answer an
21  interrogatory, but a reasonable effort to respond must be made."  Haney v. Saldana, 2010 U.S.
22  Dist. LEXIS 93447, at *9 (E.D. Cal. Aug. 24, 2010) (citing L.H. v. Schwarzenegger, 2007 U.S.
23  Dist. LEXIS 73753 (E.D. Cal. Sep. 21, 2007)).  Further, the responding party must supplement a
24  response if the information sought is later obtained or the previous response requires a correction.
25  Fed. R. Civ. P. 26(e)(1)(A).

26  **B.**    **Interrogatory 3**

27  **INTERROGATORY NO. 3:**
    DESCRIBE the DOCUMENT through which GPA communicated to YOU its executed
28  counterpart of the Purchase and Sale Agreement between DHILLON and GPA regarding the
    PROPERTY.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**
Objection: DHILLON objects to this interrogatory on the grounds that the term "executed counterpart" is not defined as is, therefore, vague, ambiguous and calls for speculation. Without waiving said objections, DHILLON responds as follows:
On July 22, 2015, Danielle Harris sent the Initial Purchase and Sale Agreement ("Agreement") to Dr. Dhillon and his agent and/or representative, Doug Phillips. On August 4, 2015, Dr. Dhillon signed the Agreement as the Director and President of Kern Lerdo. On August 15, 2015, Danielle Harris sent Dr. Dhillon the Agreement by email. The Agreement had the effective date of August 15, 2015, and also contained Schedules A-D, and an Escrow Agreement attached as Exhibit A. The Agreement is being produced in Plaintiff's [sic] Responses to First Set of Requests for Production, however, the Bates number has yet to be assigned.

The interrogatory requests information about *how* the GPA provided to Dhillon, if it did, the sales agreement after GPA signed it. (Doc. 48 at 31-32) In response, Dhillon explained how he received a copy of the sales agreement for his signature, when he signed it and a description of the attachments to the sales agreement. Id. at 32. Clearly, this response does not address whether Dhillon ever received or learned whether GPA signed, in counterpart, the sales agreement. Thus, the motion is **GRANTED**. Within ten days, Dhillon **SHALL** provide an amended response.

C.   **Interrogatory 6**

**INTERROGATORY NO. 6:**
DESCRIBE the method or manner used to calculate the amount of DHILLON'S damages claim, including, without limitation, any assumptions, conclusions, or methodology used in the calculation.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**
Objection: DHILLON objects to this interrogatory on the grounds that it calls for speculation. Without waiving said objections, DHILLON responds as follows:
In regards to the approximate income loss of $28,410,327 from the six separate properties, DHILLON has attached a summary which describes each property and explains how the loss income for each property was determines [sic].
DHILLON has yet to determine the amount of other damages it is entitled to under the COMPLAINT. DHILLON believes that its damages consist of (1) loss of the subject property; (2) the rents, issues, profits thereof; (3) the increase in the value of the subject property that could have been derived; (4) and exemplary, and/or punitive damages, however, DHILLON has not performed any method or manner to calculate the amount of its damages (not including exemplary, and/or punitive damages). DHILLON anticipates that it will hire an accountant to perform a forensic accounting, but has not done so as of yet.

In response to this interrogatory, Dhillon provided a one-page spreadsheet. (Doc. 48 at 33-34) Parts of the spreadsheet had been "greyed out" and are illegible as Dhillon admits. Id. Thus, the motion as to this interrogatory is **GRANTED**. Dhillon SHALL provide a legible copy of the spreadsheet within ten days.

14

D.     **Interrogatory 11**

**INTERROGATORY NO. 11:**
State the fair market value of the PROPERTY on September 22, 2015.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**
DHILLON claims that the fair market value of the PROPERTY on August 17, 2015 was the amount of his bid- $62,100,000.

In response to this interrogatory which inquires as to the fair market value of the property on September 22, 2015, Dhillon responded with the fair market value on August 17, 2015. (Doc. 48 at 34-35)  Dhillon explains that this was the only information he had but failed to explain this in the response or to explain whether he believes the value was unchanged on September 22, 2015 and why.  Thus, Dhillon has failed to provide a responsive answer to the interrogatory and the motion is **GRANTED**. Dhillon **SHALL** provide an amended response within ten days.

IV.    **Objections**

The defendants contend that because the responses to the discovery requests were not timely, any objections were waived.  The Court agrees.  See e.g., Davis v. Fendler, 650 F. 2d 1154, 1160 (9th Cir. 1981) (holding that untimely service of response to interrogatories waives the objections when objection raised fifteen months after the interrogatories had been propounded); See also, Richmark Corporation v. Timber Falling Consultants, 959 F. 2d 1468, 1473 (9th Cir. 1992) (stating that failure to object to document requests within the time required constitutes a waiver of any objection when no response was made and objections were not raised in a motion to compel).

On the other hand, the failure to respond timely does not necessarily waive objections based upon privilege.  Nevertheless, here, there is no evidence that the plaintiffs *ever* provided a privilege log and they admit that, despite asserting objections, they provided substantive responses. (Doc. 48 at 35)  Thus, any objections based upon privilege were waived. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005).

IV.    **Request for Sanctions**

Defendant requests monetary sanctions for the plaintiffs' failure to timely and properly respond to discovery and, as a consequence, for being forced to file this motion to compel.  (Doc.

48 at 35-36)  Pursuant to Rule 37 of the Federal Rules of Civil Procedure, the Court may issue sanctions to "penalize some forms of discovery abuse." Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1338-39.  When, as here, a motion to compel discovery is granted in part and denied in part, the Court may award "reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

In reviewing the plaintiffs' responses, most of them fail to provide any adequate justification for the failures demonstrated here.[3]  Moreover, the plaintiffs fail to explain why, when the deficiencies were pointed out to them, they did not immediately amend.  Rather, they forced the filing of this motion and forced the waste of the resources of the defendants and this Court.  This is unacceptable and fails to meet the spirit of their obligations.  However, the amount suggested, $10,000, is not proportional to demands of this motion.  Rather, the Court finds 12 hours to be a reasonable amount of time to prepare the motion and gather the evidentiary support.  Thus, the Court **GRANTS** the request for sanctions imposed on the plaintiffs in the amount of $4,800.  The plaintiffs SHALL pay this sanction amount to counsel for the defendants within ten days.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. The defendants' motion to compel (Doc. 47) is **GRANTED** in all respects *except* as to requests for production number 3 and 4.  As to these requests, the motion is **DENIED**;

2. The defendants' request for sanctions is **GRANTED in PART** in the amount of $4,800.  The plaintiffs **SHALL** pay this amount to counsel for the defendants within 10 days.

IT IS SO ORDERED.

Dated:   **December 28, 2016**          /s/ Jennifer L. Thurston
                                        UNITED STATES MAGISTRATE JUDGE

---

[3] For example, the lack of competency to respond to electronic discovery is absolutely not a sufficient explanation for the failure to provide proper responses and persisting in this explanation repeatedly through the joint statement as reasonable, frankly, is absurd.