**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DHILLON SINGH, et al., | ) Case No.: 1:15-cv-01435 - LJO - JLT |
| Plaintiffs, | ) FINDINGS AND RECOMMENDATIONS GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS |
| v. | ) |
| HANCOCK NATURAL RESOURCES GROUP, INC., et al., | ) (Doc. 81) |
| Defendants. | ) |

Defendant Goose Pond Ag, Inc. seeks an award of attorneys' fees and costs related to this action, "pursuant to the attorneys' fees clause in the Real Estate Purchase Agreement … upon which Plaintiffs based their Complaint." (Doc. 81-1 at 2)  Plaintiffs oppose the motion, asserting Defendants are not entitled to fees and costs because they were not a prevailing party on the contract.  (Doc. 94)

For the following reasons, the Court finds Defendant is a prevailing party, and recommends the motion for fees be **GRANTED** in part.

I.      **Background**

This action concerns a dispute arising from the negotiations for a real estate purchase of farmland between Plaintiffs Randeep Dhillon, also known as Dhillon Singh, and Kern Lerdo Nuts ("Plaintiffs") and Goose Pond Ag, Inc.  (*See generally* Doc. 29)  Dhillon asserted that in May 2015, he "became aware of a marketing brochure that stated that Goose Pond was selling approximately 2,470 acres of farmland, primarily consisting of an almond farm …, which included the existing irrigation

systems and twenty three water wells in working condition, by requesting bids to potential buyers." (*Id.* at 4, ¶ 6)  According to Plaintiffs, Dhillon contacted Goose Pond's agent and, in his capacity as the Director and President of Lerdo Nuts, signed a confidentiality agreement regarding the farmland. (*Id.* at 5, ¶¶ 7-8)  Plaintiffs alleged that Dhillon reviewed information regarding the farmland, and received an opportunity to tour the property.  (*Id.*, ¶¶ 9-10)

Plaintiffs alleged they submitted a bid on June 6, 2015, including "an offer to purchase" the farmland, the 2015 almond crop, irrigation symptoms, 23 water wells, "and all water rights to all related properties that had separate APN numbers."  (Doc. 29 at 6, ¶ 11)  Plaintiffs asserted that Goose Pond informed Dhillon he had "been accepted as one of the top bidders" on June 30, and a "best and final offer" with proof of funds was "due Thursday, July 9th by 2pm EST."  (*Id.* at 7, ¶ 12, emphasis omitted)  However, the bid deadline was later extended to July 16.  (*Id.*, ¶ 13)  Plaintiffs alleged Dhillon submitted "a new bid in the amount of $62,100,000 … with proof of funds" on July 16, 2015. (*Id.*, ¶ 16)

According to Plaintiffs, their agent received an e-mail on July 20, 2015, which stated in relevant part: "After review of best and final bids on Kern Lerdo, we would like to proceed with the offer submitted by your client, Dr. Randeep Dhillon, for $62,100,000, which is inclusive of the land, equipment, and 2015 almond crop."  (Doc. 29 at 8, ¶ 18)  In addition, Plaintiffs alleged the e-mail addressed cultural costs reimbursement, financial statements, and stated a real estate purchase contract would be provided for their review and comment by July 21.  (*Id.*)  Plaintiffs asserted that once the Purchase and Sales Agreement was received, Dhillon signed and returned the document on August 4, which was incorporated into the complaint by reference.[1]  (*Id.* at 4, ¶ 5; *see also id.* at 10, ¶ 27)

Plaintiffs alleged, "Dhillon took steps to liquidate his assets by selling 93 acres of real estate property that he owned, and selling five gas stations that he owned" after submitting the signed agreement.  (Doc. 29 at 10, ¶ 28)  However, Plaintiffs asserted that on August 17, 2015, Dhillon was informed "Goose Pond was cancelling the Agreement and that all communications were being terminated."  (*Id.* at 13, ¶ 38)

---

[1] Nevertheless, Exhibit A was not attached to the First Amended Complaint as, but it was not.  (*See* Doc. 29 at 4, ¶ 5)

Based upon the foregoing allegations, Plaintiffs stated the following causes of action against Goose Pond: (1) breach of written agreements, (2) intentional misrepresentation, (3) negligent misrepresentation, (4) breach of the implied covenant of good faith and fair dealing, (5) violation of California Business and Professions Code § 17200, (6) specific performance, (7) promissory estoppel, and (8) common count for goods and services. (*See* Doc. 29 at 14-27) Plaintiffs included a prayer "[f]or reasonable attorney's fees and costs" related to the breach of contracts claim. (*Id.* at 27)

Defendant filed an answer to the first amended complaint on April 19, 2016, asserting that Goose Pond "terminated… negotiations before any [Real Estate Purchase Contract] was finalized or executed." (Doc. 30 at 2, ¶ 5) Defendant maintained that the parties "had not even reached an agreement of the form of any such agreement" regarding the sale of the farmland, and that "the only binding agreement between the parties was the Confidentiality Agreement." (*Id.* at 8, ¶ 39) Further, Goose Pond asserted the company never "received a signed copy" of the Purchase and Sale Agreement. (*Id.* at 6, ¶ 27)

The Court issued a Scheduling Order governing the deadlines in the action on July 25, 2016. (Doc. 35) Thereafter, the parties engaged in discovery in the action. However, Plaintiffs failed to produce requested discovery and the Court ordered Plaintiffs to produce email communications with corresponding metadata, including the Purchase and Sale Agreement of August 4, 2015. (Doc. 62) Plaintiffs failed to comply with the Court's order, and Defendant requested the imposition of sanctions. In addition, Defendant produced significant evidence that Plaintiffs falsified documents that were produced in the course of discovery. (*See* Doc. 72 at 9-11)

The Court determined Plaintiffs had "demonstrated their willingness to ignore deadlines imposed by the Court, disrupt the course of the litigation, and prepare falsified documents to respond to discovery requests." (Doc. 72 at 13) Further, the Court found that "Plaintiffs' discovery violations make it impossible for [the] court to be confident that the parties will ever have access to the true facts," and as a result it was "appropriate to reject lesser sanctions." (Doc. 78 at 5, citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007)). Accordingly, the recommendation for terminating sanctions was adopted on April 17, 2017, and the action was dismissed with prejudice. (*Id.* at 6)

On April 25, 2017, Defendant filed the motion for attorney fees and costs now pending before the Court, asserting the award was appropriate pursuant to California Civil Code Section 1717, Local Rule 293, and Rule 54 of the Federal Rules of Civil Procedure. (Doc. 81) According to Defendant, the motion was made "on the grounds that Plaintiff's eight contract-related claims were premised on the existence of a [Real Estate Purchase Agreement] that contained an attorneys' fees provision" and Plaintiffs "claimed entitlement to their fees and costs under this provision in their Complaint and would have been entitled to such fees and costs had they prevailed." (*Id.* at 2) Further, Defendant asserts it is the prevailing party on the contract claims, because the claims were dismissed with prejudice. (*Id.*) On May 9, 2017, Plaintiffs filed their opposition to the motion, arguing fees and costs were not appropriate under Section 1717. (Doc. 94) Defendant filed a reply on May 16, 2017. (Doc. 96)

## II.     Attorney Fees

When an action invokes diversity jurisdiction, the Court is "obligated to apply California state law regarding attorneys' fees. *Farmers Ins. Exchange v. Law Offices of Conrado Sayas*, 250 F.3d 1234, 1237 (9th Cir. 2001). Under California law, attorney fees and costs are recoverable when "expressly authorized by statute or contract." *Real Property Services Corp. v. City of Pasadena*, 25 Cal. App. 4th 375, 379 (1994); *see also Berkla v. Corel Corp.*, 302 F.3d 909, 919 (2002) ("California permits parties to allocate attorney's fees by contract").

The state enacted California Civil Code § 1717 "to establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for only one party [citations], and to prevent oppressive use of one-sided attorney's fees provisions." *Hsu v. Abbara*, 9 Cal. 4th 863, 870 (1995) (citation omitted). Thus, a "prevailing party" for an action on a contract is entitled to an award of attorney' fees and costs, if a contract includes a provision for fees and costs. Cal. Civ.Code § 1717. Specifically, the statute provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a). The Court must "determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment," and the "prevailing party

on the contract shall be the party who recovered a greater relief in the contract." *Id.* § 1717(b)(1).

## III. Discussion and Analysis

Defendant's counsel seeks an award of $511,279.65 in fees related to this action. (Doc. 81-1 at 3) Plaintiffs argue Defendant should not be awarded fees because it "is not the prevailing party 'on the contract," within the meaning of Section 1717. (Doc. 94 at 3, emphasis omitted) Plaintiffs also contend an award of fees and costs would be unjust in light of the terminating sanctions. (*Id.* at 6) Finally, Plaintiffs assert the amount requested is "excessive and unreasonable." (*Id.* at 2)

### A. Whether Defendant is Entitled to Fees and Costs

It is undisputed that Plaintiffs' claims in this action are based upon an alleged Purchase and Sale Agreement with Defendant, and that the agreement included a provision for attorney fees, stating:

> In the event any legal proceeding should be brought to enforce the terms of this Agreement or for breach of any provision of this Agreement, the non-prevailing Party shall reimburse the prevailing party for all reasonable costs and expenses of the prevailing Party (including its attorneys' fees, expert witness' fees and disbursements) at trial or on appeal. For purposes of the foregoing, (i) "prevailing Party" means (A) in the case of the Party initiating the enforcement of rights or remedies, that it recovered substantially all of its claims, and (B) in the case of the Party defending against such enforcement, that it successfully defended substantially all of the claims made against it, and (ii) if no Party is a "prevailing Party" within the meaning of the foregoing, then no Party will be entitled to recover its costs and expenses (including attorney's fees and disbursements) from any other Party.

(Doc. 82-1 at 56) Plaintiffs argue Defendant is not a prevailing party on the contract within the meaning of this provision and, as a result, an award of fees is not appropriate under Section 1717. (Doc. 94 at 3-5)

#### 1. Prevailing party

Plaintiffs contend an award is not appropriate because "[t]he Court did not make a ruling on whether or not an agreement existed between the parties." (Doc. 94 at 4) However, finding that a contract is valid or exists "is not a prerequisite to an award of attorney fees under section 1717." *Hsu*, 9 Cal. 4th at 870. Rather, "a party is entitled to attorney fees under section 1717 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable, or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.'" *Id.*, quoting *Bovard v. American Horse Enterprises, Inc.*, 201 Cal.App.3d 832, 842 (1988); *see also Anmaco, Inc. v. Bohlken*, 13 Cal.App.4th 891, 902 (1993) ("[a]s long as an action 'involves' a contract, and one of the parties

would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit, the other party should also be entitled to attorney fees if it prevails, even if it does so by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract").  The California Court of Appeal explained the "mutuality of remedy" under Section 1717 as follows:

> Where a plaintiff claims breach of a contract containing an attorney fee provision and the defendant asserts there is no contract and wins, it will have established that there is no contract and, hence, no attorney fee provision. Nevertheless, since the plaintiff would have been entitled to attorney fees if the plaintiff had succeeded in proving there was a contract, courts have recognized a right of the defendant to recover attorney fees even if defendant proves there was no contract, in order to further the purposes of Civil Code section 1717.

*Dhawliwal v. Singh*, Case. 1:13-0484-LJO-SKO, 2013 WL 5477374 at *5 (E.D. Cal. Sept. 30, 2013) (quoting M. *Perez Co. v. Base Camp Condominiums Assoc. No. One*, 111 Cal. App. 4th 456, 467 (2003)).

In *Dhawliwal*, this Court determined the defendants were the "prevailing party" under Section 1717 where claims for breach of contract were dismissed with prejudice.  *Id.*, 2013 WL 5477374 at *4-5.  The Court observed that "California Code of Civil Procedure section 1032(a)(4) defines prevailing party to include 'a defendant as against those plaintiffs who do not recover any relief against that defendant," and because the claims were dismissed with prejudice, the defendants qualified as prevailing parties "[w]ithout doubt."  *Id.* at *5.  Similarly, here, Plaintiffs' claims have been dismissed with prejudice, and Plaintiffs have not recovered any relief from Goose Pond Ag.  Thus, there is no question that Defendant is a prevailing party under California law.  *See* Cal. Code Civ. P. § 1032(a)(4).

### 2. Claims on the contract

Section 1717 only applies to a party that prevails "on the contract." Plaintiffs argue that the eight claims in the First Amended Complaint are not all "on the contract" or "inextricably intertwined" to a contract, and as a result Defendant is not entitled to fees.  (Doc. 94 at 4)  According to Plaintiffs, their claims "are not all dependent on the existence of a contract," and "[m]ore than half of Plaintiffs (sic) claims would have survived even if the Court had found that there was no valid contract between the parties."  (*Id.*)  Plaintiffs assert, "At the very least, Defendant should not recover on noncontract claims."  (*Id.*, citing *Reynolds Metals Co. v. Alperson*, 25 Cal.3d 124, 129-30 (1979)).

In *Reynolds*, the court explained that "[w]here a cause of action based on the contract providing

6

for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under [Civil Code] section 1717 only as they relate to the contract action. *Id.*, 25 Cal.3d at 129. On the other hand, "joinder of causes of action should not dilute [a] right to attorney's fees" and "fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." *Id.* at 129-30. Consequently, where contract and non-contract claims are "inextricably intertwined," making it "impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units," apportionment is not necessary. *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1111 (1996).

Significantly, here, the Court previously observed that in the First Amended Complaint, "Plaintiffs brought eight contract-related claims against Defendant." (Doc. 78 at 1) Specifically, the claims presented included: intentional misrepresentation, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, violation of California Business and Professions Code § 17200, specific performance, promissory estoppel, and common count for goods and services. (*See* Doc. 29 at 14-27) Each claim is inextricably intertwined with the breach of the written agreements claim because they are rooted upon the same alleged conduct. For example, Plaintiffs' claims for intentional and negligent misrepresentation rely upon the allegations that Defendant informed Dhillon "it had accepted [his] best and final bid to purchase the Farmland," and "it would sell the Farmland to Plaintiffs *under the terms and conditions set forth in the Agreement*." (*Id.* at ¶¶ 54, 66) (emphasis added) Plaintiffs base their claim for a violation of Cal. Bus. & Prof. Code § 17200 upon "the aforementioned false, misleading and deceptive statements," evidently related to the acceptance of Dhillon's bid and an agreement to sell. (*See id.* at 22, ¶ 84)

Further, "[u]nder California law, a claim for breach of the implied covenant is necessarily *based on the existence of an underlying contractual relationship*, and the essence of the covenant is that neither party to the contract will do anything which would deprive the other of the benefits of the contract." *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (1991) (emphasis added); *see also Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co*., 90 Cal. App. 4th 335, 345 (2001) ("the implied covenant imposes upon each party the obligation to do everything that [a] contract

presupposes they will do to accomplish its purpose"). As a result, Plaintiffs would be required to demonstrate the existence of a contract to claim a breach of the implied covenant, and this claim is inextricably intertwined to the claim for a breach of the agreement. *See Mosten Mgmt. Co. v. Zurich-American Ins. Group,* 62 Fed. App'x 175, 178 (9th Cir. 2003) (find a claim for a breach of the implied contract was "inextricably intertwined" with the plaintiff's "claim to obtain… contract benefits").

Likewise, Plaintiffs would be required to show the existence of a contract for the "claim" for specific performance, which is "not an independent cause[] of action" but rather "a remedy for a breach of contract where there is no adequate remedy at law." *Billingsley v. MV Transp., Inc.*, 2017 U.S. Dist. LEXIS 38991 at *16 (E.D. Cal. Mar. 17, 2017) (citing *Wilkinson v. Wiederkehr*, 101 Cal. App. 4th 822, 833 (2002)). As a remedy, the request for specific performance is "dependent upon [the] contract claims," and thus inextricably intertwined with the existence of the alleged purchase and sale agreement. *See id.* The same is true of Plaintiffs' request for a common count. *See Batt v. City and County of San Francisco*, 155 Cal.App.4th 65, 82 (2007) (explaining a common count "is not an independent cause of action but merely a type of remedy" under California law).

Because Plaintiffs' claims and remedies are all inextricably intertwined to the alleged Purchase and Sale Agreement with Goose Pond Ag, no apportionment of fees is required. *See Reynolds*, 25 Cal. 3d at 129-30.

## B.    Rule 37 and the Requested Fees and Costs

Finally, Plaintiffs argue that an award of attorney fees and costs would be unjust. (Doc. 94 at 6-7, citing Fed. R. Civ. P. 37(b)(2)(c)). As Plaintiffs observe, Rule 37 provides: "The court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

However, Plaintiffs fail to acknowledge that Rule 37 addresses the imposition of monetary sanctions "to penalize some forms of discovery abuse." *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1338-29 (9th Cir. 1985). Thus, the fees and expenses contemplated Rule 37 relate only to the discovery failures, not an award of fees and costs for the prevailing party in an action after judgment is entered.

8

1    Moreover, the language of Section 1717 is "mandatory, unavoidable and emphatic." *Ribbens*

2    *International, S.A. de C.V. v. Transportation International Pool, Inc.*, 47 F. Supp. 2d 1117, 1122 (C.D.

3    Cal. 1999). Pursuant to the statute, the party prevailing on the contract "*shall* be entitled to reasonable

4    attorney's fees in addition to other costs." Cal. Civ. Code § 1717(a) (emphasis added). Accordingly,

5    the Court is not persuaded that it should find an award of fees and costs is unjust under Rule 37, or that

6    the decision to award fees and costs is discretionary.

7        **C.    Fees to be Awarded**

8        Because Defendant is the prevailing party within the meaning of Section in 1717, Goose Pond

9    Ag is entitled to an award of fees. In general, the Court determines a reasonable fee award "by

10   multiplying the number of hours reasonably expended by counsel on the particular matter times a

11   reasonable hourly rate." *Florida v. Dunne*, 915 F.2d 542, 545 n. 3 (9th Cir. 1990) (citing *Hensley v.*

12   *Eckerhart*, 461 U.S. 424, 433 (1983)). The product of this computation, the "lodestar" amount, yields a

13   presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013);

14   *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

15            1.    Hourly rate

16       The Supreme Court explained that attorney fees are to be calculated with "the prevailing market

17   rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). In general, the

18   "relevant community" for purposes of determining the prevailing market rate is the "forum in which the

19   district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a

20   case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate

21   forum to establish the lodestar hourly rate." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129

22   (E.D. Cal. 2011). "[R]ates, other than those of the forum, may be employed if local counsel was

23   unavailable, either because they are unwilling or unable to perform because they lack the degree of

24   experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*,

25   987 F.2d 1392, 1405 (9th Cir. 1992).

26            a.    *Attorneys*

27       Mark Erickson reports the attorneys billed hourly rates ranging from $340 to $725, which they

28   discounted ten percent "[p]ursuant to an agreement between GPA and Haynes and Boone, LLP."

(Doc. 82 at 4, Erickson Decl. ¶ 5(e); *see also id.* at 4-5, ¶¶ 6-7)  Accordingly, the requested hourly rates range from $292.50 to $652.50.  (*Id.* at 4-5, Erickson Decl. ¶¶ 6-7)

Significantly, while Defendant argues that "[t]he rates for the attorneys on the case are at or below the market rate for attorneys of similar experience" (Doc. 81-1 at 15), Defendant offers no evidence in support of this assertion.[2]  Indeed, the hourly rates requested exceed those typically awarded in the Fresno Division of the Eastern District of California.  Further, Defendant's counsel do not argue that local counsel was unavailable to handle this breach of contract action and fail to meet their burden to show that hourly rates other than those of the Fresno Division should be sued for purposes of calculating the lodestar.  *See Camacho,* 523 F.3d at 979; *Barjon v. Dalton,* 132 F.3d 496, 500-02 (9th Cir. 1997) (affirming the district court's decision to decline an award of out-of-district billing rates where the fee applicants failed "to prove the unavailability of local counsel," and instead reduced the award to the hourly rates in the relevant community).  Therefore, the Court must reduce the hourly rates to those in line with the Fresno Division.

This Court has reviewed the billing rates for the Fresno Division and rejected a $650 hourly rate—similar to the rate sought by Mr. Erickson—finding it was "high for even the most experienced attorneys in the Eastern District." *Ontiveros v. Zamora*, 303 F.R.D. 356, 374 (E.D. Cal. 2014).  Rather, the Court determined "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014); *see also Trujillo v. Singh,* 2017 WL 1831941 (E.D. Cal. May 8, 2017) (awarding an hourly rate of $300 per hour to counsel with 15 years of experience, finding this amount was appropriate for the Fresno area).  For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester,* 2014 WL 7239371 at *4 (citing *Willis v. City of Fresno*, 2014 WL 3563310 (E.D.

---

[2] "[T]he burden is on the fee applicant to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community." *Blum*, 465 U.S. at 895, n.11.  The Ninth Circuit determined "satisfactory evidence of the prevailing market rate" includes affidavits of counsel "regarding prevailing fees in the community," as well as "rate determinations in other cases." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

10

Cal. July 17, 2014); *Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). With these parameters in mind, the hourly rates for counsel must be adjusted to calculate the lodestar.

The hourly rate for Mark Erickson, who has more than twenty years of experience, will be reduced to $400. For Kimberly Chase, who was admitted to the bar in December 2007 and has less than ten years of experience, the lodestar will be calculated at the rate of $225 per hour. Finally, the hourly rates for Allan Gustin and Brittany Parks, who each had less than one year of experience when they began working on this action, will be reduced to $175.[3]

### b. Non-attorney staff

Defendant's counsel calculated the lodestar using an hourly rate of $144 for Kathleen Tenerelli, a certified paralegal. (See Doc. 82 at 5, Erickson Decl. ¶ 7(d)) Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00. *See Silvester*, 2014 WL 7239371 at *4 ("[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience"); *Trujillo,* 2017 WL 1831941 at *3 (finding requested hourly rates of $95-115 were reasonable in the Fresno Division); *Spence v. Wells Fargo Bank*, N.A., 2012 WL 844713 at *5 (E.D. Cal., Mar. 12, 2012) (approving "paralegal or other support rates" of $125.00, $145.00 and $155.00). Because Ms. Tenerelli is a certified paralegal, the Court finds the higher hourly rate is appropriate and it is within the range typically awarded within this district. Consequently, no adjustment will be made to the requested rate of $144 per hour.

### 2. Time expended

"The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Applying this standard, "a district court should

---

[3] Mr. Erickson reported that Allan Gustin received his law degree in 2015 and Brittany Parks received her law degree in 2016 but did not provide any information regarding the admission dates of Mr. Gustin or Ms. Parks. (*See* Doc. 82 at 5, Erickson Decl. ¶ 7(b) and (c)). However, the Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). Thus, the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014).

Review of the state bar's website indicates that Mr. Gustin was admitted in December 2015, the same month he began working on this action. (*See* Doc. 100-2 at 2). Likewise, Ms. Parks was admitted in December 2016, and her time entry for the action occurred the same month. (*See id.* at 72)

exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mutual Life Co*., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotation marks and citation omitted); *also see Tahara v. Matson Terminals, Inc*., 511 F.3d 950, 955 (9th Cir. 2007).

### a. Clerical work

As an initial mater, courts have discounted billing entries for clerical tasks such as "filing, transcript, and document organization time." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.,* 132 F.3d 978, 985 (4th Cir. 1997) (approving the elimination of hours spent on clerical tasks from the lodestar calculation); *Jones v. Metropolitan Life* Ins. Co., 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying").

Review of the time sheets provided reveals many entries for reviewing the docket, downloading, calendaring deadlines, preparing documents for filing, and filing documents. Courts have determined these tasks are clerical in nature, and time expended should not be awarded. *See e.g., L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 899 (E.D. Cal. 2009) (finding organizing and updating files appeared clerical, and declining to award fees where the applicant "tendered no evidence that these are tasks that required the skill of a paralegal"); *Moore v. Chase, Inc*., 2016 U.S. Dist. LEXIS 88293 at *12 (E.D. Cal. July 7, 2016) (finding review of a docket is "purely clerical" work and declining to award fees for the time spent); *Douglas v. Colvin*, 2016 U.S. Dist. LEXIS 86858 at *6 (E.D. Cal. July 5, 2016) (identifying "downloading, filing and mailing of documents" as clerical tasks); S*antiago v. CACH LLC*, 2013 U.S. Dist. LEXIS 157809, at *11 n.2 (N.D. cal. Nov. 4, 2013) (declining to award time for preparation of service documents and reviewing documents for calendar deadlines); *Compass Bank v. Morris Cerullo World Evangelism*, 2015 WL 3442030, at *8 (S.D. Cal. May 28, 2015) (identifying drafting a revised subpoena and preparing documents for service as clerical tasks); Given the clerical nature of these tasks, the following time will be deducted:

| Date | Attorney/Staff | Task(s) | Time |
|------|---------------|---------|------|
| 01/23/16 | K. Chase | Check status of court docket for plaintiff's opposition to motion to dismiss. | 0.1 |
| 02/05/16 | K. Chase | Check status of docket. | 0.1 |
| 02/10/16 | A. Gustin | Review calendar court and motion deadlines; analyze Federal Rules of Civil Procedure regarding backward-looking deadlines. | 1.7 |

| 02/29/16 | M. Erickson | Emails regarding filing of scheduling report. | 0.2 |
|---|---|---|---|
| 03/14/16 | A. Gustin | Review and verify Rule 60 calendaring. | 0.2 |
| 03/14/16 | K. Tenerelli | Download all Marend Garett's Facebook postings for 2016. | 0.4 |
| 03/28/16 | M. Erickson | Review and confirm filing.[4] | 0.1 |
| 04/19/16 | A. Gustin | Review Eastern District local rules and Judge O'Neill's court rules for filing answer; prepare answer for filing; file answer.[5] | 1.0 |
| 05/19/16 | K. Chase | Check court's docket for recent activity. | 0.1 |
| 06/08/16 | K. Tenerelli | Download client documents from T. Schoenberg. | 1.2 |
| 07/05/16 | A. Gustin | Prepare service of Trinitas subpoena. | 1.4 |
| 07/27/16 | K. Tenerelli | Gather, organize, and download key documents from chronology to review. | 3.4 |
| 07/28/16 | A. Gustin | Ensure proper calendaring of scheduling order deadlines. | 0.5 |
| 08/10/16 | K. Chase | Review and revise trial calendar and countdown. | 0.3 |
| 01/26/17 | K. Tenerelli | Maintain deposition transcript and exhibits file. | 0.5 |
| 01/27/17 | K. Tenerelli | Update file with deposition exhibits from Dr. Phillip's deposition. | 1.0 |
| 01/31/17 | K. Tenerelli | Maintain deposition transcript and exhibit files along with documents received from clients. | 0.7 |
| 02/02/17 | K. Tenerelli | Update deposition exhibit binders and indexes. | 2.0 |
| 02/16/17 | K. Tenerelli | Update deposition exhibit binder and index. | 0.8 |

These entries result in a deduction of 15.8 hours from the lodestar calculation, including 4.8 hours for Allan Gustin, 0.6 hours for Kimberly Chase, 0.3 hours for Mark Erickson, and 10.0 hours for Kathleen Tenerelli.

### b. *Internal communications and associate training*

Plaintiffs assert, "Defendant's request should be reduced to account for excessive duplication." (Doc. 94 at 7) As Plaintiffs observe, a fee applicant "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 364. Plaintiffs contend Defendant failed to make this effort, and "[i]n numerous instances, multiple attorneys seek fees for working on the same submissions and issues, and for repeatedly 'consulting' one another." (Doc. 94 at 7)

Notably, the Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). However, in general, two attorneys cannot bill for attending the same meeting or communicating with each other, as such time is unnecessary. *In re Mullins*, 84 F.3d 459, 467, 318 U.S. App. D.C. 19 (D.C. Cir. 1996);

---

[4] Notably, Ms. Chase also indicates she spent time on March 28, 2016 to "[o]versee filing" of the same document. (Doc. 100-2 at 16)

[5] Mr. Erickson's time entries for the same date indicate that *he* reviewed and filed the answer. (Doc. 100-2 at 21)

*Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010). Here, as Plaintiffs assert, there are numerous entries indicating internal communications and conferences with counsel.

As this Court previously observed, "many courts have … reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) (citing, *e.g.*, *Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D.Cal. 2003) (reducing selected time entries because attorneys "billed an inordinate amount of time for interoffice conferences"); *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan.4, 2007) ("[c]laiming a disproportionate number of hours for communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate"); *Gibson v. City of Chicago*, 873 F.Supp.2d 975, 987 (N.D.Ill.2012) (eliminating time entries for duplicative tasks)).

Here, there are a significant number of billing entries that indicate time spent on interoffice conferences, whether in person or via e-mail, including[6]:

| Date | Attorney | Task(s) | Time |
|------|----------|---------|------|
| 01/04/16 | M. Erickson | Revise memorandum regarding agreements to agree and contracts to negotiate; email to K. Chase and M. Erickson (sic) with memorandum attached. | 0.5 |
| 01/25/16 | A. Gustin | Communicate with K. Chase and M. Erickson about filing 12(b) motion. | 0.4 |
| 01/25/16 | M. Erickson | *E-mails* with co-counsel and *with K. Chase; meeting with K. Chase and A. Gustin*; telephone conference e-mail message to client; evaluate strategy. | 0.5 |
| 01/28/16 | A. Gustin | Review and edit 12(b)(1) Motion to Dismiss, Notice of Motion, and Request for Judicial Notice; research FRCP 7.1 and corporate disclosure statements; *discuss research findings with K. Chase and M. Erickson*; draft Corporate Disclosure Statement. | 2.7 |
| 02/16/16 | A. Gustin | Research and communicate with K. Chase regarding joint scheduling conference with opposing counsel. | 0.3 |
| 03/03/16 | M. Erickson | Review Order and Judgment; e-mail to client and R. Martin; *conference with K. Chase* regarding effect. | 0.4 |
| 04/06/16 | A. Gustin | Research and revise affirmative defenses; *draft email to M. Erickson and K.Chase summarizing research findings*. | 2.0 |
| 04/07/16 | A. Gustin | Further revise affirmative defenses; *communicate with K. Chase* regarding same. | 0.4 |
| 04/14/16 | M. Erickson | Review and revise litigation hold; review notes of interview with D. Harris; *conference with K. Chase*. | 0.3 |
| 04/14/16 | A. Gustin | Research and analyze Kern Lerdo Nuts Inc. place of incorporation and lack of registration with California Secretary of | 2.4 |

---

[6] Notably, there are more billing entries that strongly suggest the e-mails were interoffice communications. Because the recipients of those e-mails are not identified in the billing records, the Court will not disturb the hours reported related to those communications.

| | | State; *draft summary of research findings for K. Chase and M. Erickson.* | |
|---|---|---|---|
| 04/15/16 | M. Erickson | Review documents; review and revise answer and *conference with K. Chase* regarding same. | 2.0 |
| 04/19/16 | M. Erickson | E-mails regarding answer; review and file latest answer.[7] | 0.3 |
| 05/02/16 | M. Erickson | Check on e-mails with K. Chase. | 0.1 |
| 05/31/16 | A. Gustin | Discuss 26(f) conference and checklist, initial disclosures, and form interrogatories and requests for production with K. Chase. | 0.3 |
| 06/08/16 | M. Erickson | Prepare for and participate in conference call to interview Rick Bodio; *e-mails with K. Chase regarding same.* | 1.5 |
| 07/01/16 | M. Erickson | Review revised disclosures and *conference with K. Chase*; review Trinitas subpoena; e-mail to client. | 0.5 |
| 07/08/16 | M. Erickson | Review and revise Early Meeting of Counsel report; *conference with K. Chase* regarding same | 0.5 |
| 07/12/16 | M. Erickson | Conference with K. Chase re Early Meeting of Counsel report and e-mails regarding same. | 0.3 |
| 07/13/16 | M. Erickson | E-mails regarding discovery and Early Meeting of Counsel report; telephone conference with K. Chase regarding same. | 0.4 |
| 07/14/16 | M. Erickson | E-mails with K. Chase regarding discovery and hearing. | 0.2 |
| 07/18/16 | M. Erickson | Review Protective Order for GPA and *conference with K. Chase.* | 0.4 |
| 07/25/16 | K. Chase | *Confer with Mr. Erickson regarding Rule 26 conference*; review court's minutes from same; review court's scheduling order; telephone call from Hancock's counsel regarding document collection; email Hancock's counsel regarding sales information; continue drafting responses to Plaintiff's interrogatories and requests for production. | 2.6 |
| 07/26/16 | M. Erickson | *E-mails regarding discovery*; review and revise interrogatory responses *and conference with K. Chase* regarding same; review Court's Order and revised schedule; review Trinitas documents. | 1.5 |
| 08/17/16 | M. Erickson | *Conference with K. Chase* regarding meet and confer strategy on discovery; review documents. | 0.4 |
| 08/23/16 | M. Erickson | *Conference with K. Chase* regarding discovery and options for getting sanctions; e-mail to client regarding same; review e-mails regarding discovery. | 1.0 |
| 08/30/16 | M. Erickson | *E-mails with K. Chase* on our native files; review e-mails with Plaintiffs' counsel regarding meet and confer. | 0.4 |
| 09/01/16 | M. Erickson | *Conference with K. Chase* regarding meet and confer with opposing counsel and strategy going forward; review and revise e-mail to client and opposing counsel; review follow-up discovery to Plaintiffs and to Gary Chahil. | 1.3 |
| 09/20/16 | M. Erickson | Review e-mail on discovery; *e-mails and conference with K. Chase* regarding same. | 0.3 |
| 09/27/16 | M. Erickson | Review subpoenas to Chahil, etc.; *conference with K. Chase* regarding deposition schedule. | 0.3 |
| 09/28/16 | M. Erickson | Review supplemental responses and *conference with K. Chase* regarding discovery. | 0.3 |
| 09/29/16 | M. Erickson | *Conference with K. Chase* regarding supplemental responses and meet and confer; e-mails with third party witness on document production; review meet and confer. | 0.3 |
| 10/05/16 | M. Erickson | E-mails with K. Chase regarding depositions. | 0.2 |
| 10/12/16 | M. Erickson | Review and revise Joint Discovery Statement; *e-mails and telephone conference with K. Chase.* | 1.4 |
| 10/13/16 | M. Erickson | Review e-mails on Chalil *and discuss with K. Chase.* | 0.2 |
| 10/14/16 | M. Erickson | *E-mail exchange with K. Chase regarding discovery* and review | 0.5 |

---

[7] Time spent filing the answer should not be awarded given the clerical nature of the task.

| | | | Joint Statement. | |
|---|---|---|---|---|
| 10/18/16 | M. Erickson | Review bankruptcy information for Plaintiff; e-*mail with K. Chase regardomg (sic) deposition strategy with Trinitas.* | 0.3 |
| 10/20/16 | M. Erickson | E-mail exchange with K. Chase regarding strategy with deposition of Chalil and purported unavailability. | 0.2 |
| 11/04/16 | M. Erickson | Review and revise discovery status report; analyze strategy regarding judge request on motions to compel; *conference with K. Chase regarding Trinitas deposition.* | 1.4 |
| 11/15/16 | M. Erickson | *Conference with K. Chase regarding discovery conference and plan next steps;* review e-mail updates to client and opposing counsel. | 0.8 |
| 11/28/16 | A. Gustin | Review and analyze Dhillon bankruptcy material with M. Erickson and K. Chase. | 0.8 |
| 12/06/16 | M. Erickson | Prepare outline for Bealbti PMK deposition and *e-mail to K. Chase re strategy.* | 0.6 |
| 12/07/16 | M. Erickson | Prepare for deposition and *conference with K. Chase re same.* | 0.9 |
| 12/09/16 | M. Erickson | Prepare for and take deposition of Dhillon Singh; *conference with K. Chase and A. Gustin re next steps and additional discovery/motions.* | 8.0 |
| 12/13/16 | M. Erickson | Prepare for and take deposition of Singh; *conference with K. Chase following deposition re open discovery issues and experts.* | 7.5 |
| 12/14/16 | M. Erickson | *Conference with K. Chase re additional discovery;* review e-mails re same; e- mail to Hancock counsel re witness availability. | 1.0 |
| 12/29/16 | M. Erickson | Review order on motion to compel and *confer with K. Chase re same; review emails on sanctions research;* review updates on service of counsel. | 0.9 |
| 01/02/17 | M. Erickson | Review Singh deposition transcript on current money in bank for sanction payment; *e-mail to K. Chase* re same. | 0.3 |
| 01/04/17 | M. Erickson | Prepare Requests for Production (Set 5) to Dhillon; *telephone conference with K. Chase re outcome of Chahil deposition.* | 0.7 |
| 01/05/17 | M. Erickson | Conference with K. Chase and e-mails re Bank subpoena. | 0.2 |
| 01/09/17 | M. Erickson | Conference with K. Chase re counterclaims for fraud. | 0.2 |
| 01/14/17 | M. Erickson | Emails with K. Chase on depositions; review proposed strategy on motion for sanctions and provide comment | 0.3 |
| 01/24/17 | M. Erickson | Travel to and from and attend deposition of D. Phillips and *telecons with K. Chase.* | 9.5 |
| 01/25/17 | M. Erickson | Review and revise stip on transcript; *confer with K. Chase on case.* | 0.3 |
| 01/26/17 | M. Erickson | Confer with K. Chase regarding opposition to motion for sanctions. | 0.2 |
| 02/16/17 | M. Erickson | Travel to and from and attend hearing on motion for sanctions; email to client with update; *teleconference updates to K. Chase and A. Gustin.* | 7.5 |
| 02/16/17 | A. Gustin | Review and analyze Doppes v. Bentley Motors regarding sanctions for abuse of discovery; *review sanctions hearing with M. Erickson.* | 0.8 |

(Doc. 100-2 at 6, 7, 8, 12, 20, 21, 26, 31, 36, 38, 39, 45, 47, 52, 53, 56, 58-59, 64-65, 70-72, 75, 78-80, 82, 84, 85, 90) (emphasis added). Thus, there are 69.5 hours of billed time that include entries related to interoffice conferences and communications. Based upon the review of the record and the nature, the Court finds the time expended should be reduced by 13.84 hours for Mark Erickson, 0.52 hours for

Kathleen Chase, and 3.2 hours for Allan Gustin for purposes of calculating the lodestar.[8]

Furthermore, this Court previously determined that "[t]ime billed by junior associates is not 'reasonably expended' where it serves as training rather than productive legal work, and courts are justified in eliminating 'hours not necessary in light of the experience of the attorney.'" *Gauchat-Hargis*, 2013 WL 4828594 at *3 (quoting *Ward v. Tipton Cnty. Sheriff Dep't*, 937 F.Supp. 791, 801 (S.D. Ind.1996)).

In this case, it appears the junior attorneys billed for hours best described as "training" on many occasions. For example, after Ms. Chase drafted a motion to dismiss, notice of motion, and request for judicial notice, Mr. Gustin indicated that he spent 0.7 hours to "[r]eview and revise" the documents on January 27, 2016. (*Id.*) On January 28, 2016, Mr. Erickson, Mr. Gustin, and Ms. Chase all billed time for reviewing and revising the motion to dismiss. (*Id.*) In light of the fact that Mr. Gustin had less than two months' experience at the time, it appears that his review of the documents was for training purposes only, particularly where the same document was reviewed and revised by a senior attorney on the same date. Accordingly, the time spent by Mr. Gustin communicating with the senior attorneys about the 12(b) motion and reviewing the documents will be eliminated from the lodestar, which results in a deduction of 1.1 hours.

Likewise, the Court finds the time spent by Mr. Gustin and Ms. Parks in preparing internal memorandums to the senior attorneys on the action should not be awarded, given both the training nature and status as an internal communication. For example, Allan Gustin began researching "agreements to agree and contracts to negotiated in good faith" in December 2015. (Doc. 100-2 at 3) He reported spending 5.0 hours on January 5, 2016 to perform "research regarding agreements to agree and contracts to negotiate," including whether such agreements to are enforceable in California and the damages that may be recovered. (Doc. 100-2 at 6) This entry also included time to "begin drafting memorandum summarizing research findings regarding same." (*Id.*) Over the next two days, Mr.

---

[8] For entries were the only task listed was a conference, the entirety of the time was deducted. For the entries including both interoffice communications and other tasks, the Court reduced the hours by twenty percent. *See Dubose v. Cnty. of L.A.*, WL 2135293, at *5 (C.D. Cal. June 11, 2012) (reducing billings by 20 percent due in part to vague time entries and excessive entries for communications between counsel); *see also Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010) (upholding 30 percent reduction of 80 percent of billable hours to account for block-billing).

Gustin indicated he spent 2.9 hours to "finish [the] draft of memorandum summarizing research findings on agreements to agree, contracts to negotiate, and damages," revising the draft, and emailing the memorandum to Ms. Chase and Mr. Erickson.  (*Id*. at 7)  Similarly, when Ms. Parks was admitted to the bar and began working on the action the same month, she researched various topics and prepared memorandums to convey her findings.  (*See, e.g., id.* at 72, 75)

While the Court finds the time spent on legal research is appropriate, the time spent drafting— and revising— internal communications to the senior attorneys that simply summarized research should not be awarded.  *See Gauchat-Hargis*, 2013 WL 4828594 at *3; *In re Durosette*, 2012 WL 9123382 at *3 (E.D. Cal. Aug. 23, 2012) (finding a reduction of time appropriate in part due to the amount of time spent by a new associate for legal research "and preparing memos to the lead partner on the case").

Accordingly, the following time entries will be eliminated from the lodestar:

| Date | Attorney | Task(s) | Time |
|---|---|---|---|
| 01/06/16 | A. Gustin | Finish draft of memorandum summarizing research findings on agreements to agree, contracts to negotiate, and damages; revise draft regarding same | 2.7 |
| 01/07/16 | A. Gustin | Revise memorandum regarding Agreements to Agree and Contracts to Negotiate; draft email to K. Chase and M. Erickson with memorandum attached | 0.2 |
| 01/11/16 | A. Gustin | Review K. Chase edits and revisions on memorandum for agreements to agree and contracts to negotiate. | 0.1 |
| 01/12/16 | A. Gustin | Draft memorandum to K. Chase and M. Erickson regarding whether the allegations of Singh's complaint give rise to an agreement to agree or a contract to negotiate. | 1.6 |
| 01/12/16 | A. Gustin | Draft email to K. Chase regarding update of memorandum regarding agreements to agree and contracts to negotiate. | 0.2 |
| 01/13/16 | A. Gustin | Revise research memorandum regarding whether Singh's allegations give rise to an agreement to agree or contract to negotiate; draft email to K. Chase and M. Erickson regarding same. | 2.1 |
| 06/22/16 | A. Gustin | Continue summary of research findings regarding the attorney-client privilege, waiver, and assertion of that privilege by Goose Pond Ag. | 2.8 |
| 12/16/16 | B. Parks | Prepared and wrote summary of findings, including Federal case law descriptions, regarding whether an agent's statements are admissible as vicarious admissions of a party-opponent where a seller of real property authorizes the agent to negotiate with a potential buyer of the property under the Federal Rules of Evidence 801(d)(2)(C) and 801(d)(2)(D). Also discussed the potential limitations on the Rules. | 2.0 |
| 12/23/16 | B. Parks | Prepared and wrote summary of findings on whether Judge Lawrence O'Neill of the Eastern District of California has issued sanctions rulings involving a party's falsification or alteration of evidence. | 0.8 |
| 12/27/16 | B. Parks | Prepared and wrote summary of case law findings which held that, when a party brings a Rule 11 motion for sanctions as opposed to the court, the party against whom the sanctions are sought may cure the defects in their complaint or dismiss their claim pursuant to Rule 11's safe harbor provision… | 0.9 |

| 12/28/16 | B. Parks | Prepared and wrote summary of case law and rulings by Eastern District Judge Lawrence O'Neill where he has issued sanctions against parties. | 0.9 |
|---|---|---|---|
| 1/12/17 | B. Parks | Prepare and write summary of California state, California district court, and Ninth Circuit opinions that discussed the unclean hands doctrine in relation to breach of contract claims and specific performance claims. | 1.3 |
| 1/19/17 | B. Parks | Prepare and write summary of California case law discussing the required elements of a claim for specific performance in the context of a real estate transaction. | 0.8 |

(Doc. 100-2 at 7, 32, 72, 74, 82)  Thus, this results in a deduction of 16.4 hours from the lodestar calculation for internal communications and associate training, including 9.7 hours for Allan Gustin and 6.7 hours for Brittany Parks.

c.    *Block billing*

The billing records provided to the Court include "block billing," where the timekeeping format "bundles tasks in a block of time."  *See Aranda v. Astrue*, 2011 U.S. Dist. LEXIS 63667, at *13 (D. Ore. June 8, 2011).  As the Ninth Circuit observed, "block billing makes it more difficult to determine how much time was spent on particular activities." *Welch v. Metro. Life Ins*., 480 F.3d 942, 948 (9th Cir. 2007). Consequently, where attorneys present time expended in "blocks," the Court may "simply reduce[] the fee to a reasonable amount." *Fischer v. SJB-P.-D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Welch*, 480 F.3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are billed in block format"). A district court may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion" for block billing. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Here, the use of block billing is particularly troublesome given the number of entries that include clerical tasks and other tasks for which fees should not be awarded.  For example, on December 16, 2015, Ms. Chase indicated she spent 1.7 hours to "[r]eview complaint, purchase agreement, and other documents; research regarding opposing counsel; [and] analysis regarding next steps." (Doc. 100-2 at 2)  On March 8, 2016, she reviewed the substitution of attorney, performed "research regarding Plaintiffs' new counsel," and emailed counsel for the co-defendant "regarding same." (*Id.* at 15)  Similarly, on December 28, 2015, Ms. Chase noted 1.6 hours to "[r]eview docket" and conduct legal research, without distinguishing the time on the clerical task.  (*Id.* at 3)  While time spent

reviewing documents such as the complaint, purchase agreement, and the substitution of attorney is compensable, the time expended researching Plaintiffs' attorneys and reviewing the docket should not be awarded.  Given the block-billing format of the entries, however, the Court is unable to ascertain the amount of time Ms. Chase spent on compensable tasks.

In light of the block-billing format used by all who worked on this matter, the Court finds it appropriate to exercise its discretion to reduce the number of hours expended on the litigation by ten percent for purposes of the lodestar calculation.  *See Moreno*, 534 F.3d at 1112.

### d.      Hours related to the motion for fees

Defendant seeks compensation in the amount of $16,722.50 for an estimated 45 hours of time related to the filing of this motion, including:

a.  $8,775.00 for approximately 30 hours spent by Allan Gustin organizing and drafting this motion;
b.  $1,305.00 for roughly 2 hours spent by [Mark Erikson] reviewing, editing, and revising this motion;
c.  An anticipated $1,462.50 for roughly 5 hours spent by Allan Gustin reviewing Plaintiffs' anticipated opposition and preparing a reply.
d.  An anticipated $5,220.00 for roughly 8 hours spent by [Mark Erikson] preparing for and attending the hearing on this motion.

(Doc. 82 at 6, Erickson Decl. ¶ 8)

Fees incurred in litigating the award of fees are recoverable.  *Serrano v. Unruh*, 32 Cal.3d 621, 639 (1982).  However, the thirty hours sought for "organizing and drafting" the motion appears excessive, particularly given the fact that the memorandum of points and authorities is approximately sixteen pages.  Though Defendant had an opportunity to present evidence to support this estimation, none was provided.  Instead, the billing records provided to the Court stop on March 23, 2017. (*See* Doc. 100-2 at 99)  Although Mr. Gustin provided a declaration in support of the motion for fees and costs, he did not provide any information regarding the time he spent preparing the motion.  (*See* Doc. 82)  In addition, no information regarding the actual time spent on the motion was filed with the reply brief.  Given the short length of the moving papers, the Court reduces the time awarded for Mr. Gustin's preparation to 15 hours.  Further, the Court declines to award the anticipated time for preparing and attending the hearing, as the matter was taken under submission without oral argument.

Accordingly, the Court recommends **$4,300.00** be awarded in fees related to this motion.[9]

### 3. Lodestar calculation

With the hourly rates and time adjustments set forth above, the lodestar in this action is $246,758.67, which includes $242,458.67 prior to the filing of the motion:

| Legal Professional | Adjusted Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Mark Erickson | 139.55 | $400 | 55,820.00 |
| Kimberly Chase | 427.03 | $225 | 96,081.75 |
| Allan Gustin | 450.63 | $175 | 78,860.25 |
| Brittany Parks | 40.77 | $175 | 7,134.75 |
| Kathleen Tenerelli | 31.68 | $144 (no adjustment) | 4,561.92 |
| | | | |
| | | | $242,458.67 |

Significantly, there is a strong presumption that the lodestar is a reasonable fee. *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978. Therefore, the Court recommends Defendant's motion for fees be **GRANTED** in the modified amount of $**246,758.67.**

### E. Costs to be Awarded

In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases. *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)). This is because "federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Thus, federal procedural law governs a request for an award of costs.

Rule 54 of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir.

---

[9] This amount includes 15 hours for Mr. Gustin preparing the motion ($2,625.00); two hours for Mr. Erickson reviewing and revising the motion ($800.00); and 5 hours for Mr. Gustin preparing the reply ($875.00).

21

2003).  For example, costs may be declined in light of "a losing party's limited financial resources" or where there has been "misconduct by the prevailing party." *Champion Produce*, 342 F.3d at 1022.

The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006).  However, the Ninth Circuit determined that the cost limitations of 28 U.S.C. § 1920 "do not control" when there is an action on a contract under Cal. Civil Code § 1717, and the "plain language" of the agreement indicates that "the prevailing party [is] to recover all costs." *Hobson v. Orthodontic Centers of Am. Inc.*, 220 Fed. App'x 490, 491 (9th Cir. 2007).  The burden is on the losing party to demonstrate that the court should disallow requested costs. *Save Our Valley*, 353 F.3d at 946.

Here, the provision governing attorney fees and costs in the Purchase and Sale Agreement provided that "the non-prevailing Party *shall reimburse* the prevailing party for *all reasonable costs and expenses of the prevailing Party* (including its attorneys' fees, expert witness' fees and disbursements) at trial or on appeal."  (Doc. 82-1 at 56)  Thus, the "plain language" of the provision indicates that Plaintiffs shall pay the costs and expenses identified by Defendant.  *See Hobson v.* 220 Fed. App'x at 491 (finding the court "properly awarded all costs" where the parties' contract "provided that the prevailing party on any legal action under the Agreement was entitled to recover attorneys' fees and costs," and Cal. Civil Code § 1717 governed the "prevailing party" determination). Consequently, as the prevailing party under Section 1717, Defendant is entitled to recover costs related to this litigation.

Defendant's counsel reports spending "$15,435.00 on expert fees, and $23,478.29 in costs defending against the Complaint." (Doc. 81 at 14) These expenses include costs for attempted service and service of subpoenas; costs for deposition transcripts and videotapes; witness fees; and "making copies of any material where the copies [were] necessarily for use in the case," such as subpoenaed records. (*See* Doc. 83-2 at 2-3) Plaintiffs do not raise any objections to the requested costs. (*See generally* Doc. 94) Because Plaintiffs do not carry the burden to demonstrate the costs should not be awarded, the Court recommends Defendant's requested award expenses and costs be **GRANTED**.

**IV.     Findings and Recommendations**

Based upon the foregoing, the Court **RECOMMENDS**:

1.     Defendant's motion for attorney fees be **GRANTED** in the modified amount of **$246,758.67;**

2.     The request for expert fees be **GRANTED** in the amount of $15,435.00; and

3.     The request for costs be **GRANTED** in the amount of $23,478.29.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be filed within seven days of the date of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   __**May 24, 2017**__                             _____**/s/ Jennifer L. Thurston**__
                                                          UNITED STATES MAGISTRATE JUDGE

23